GILLIARD EDWARDS, ADMINISTRATOR, v. INTERSTATE CHEMICAL
COMPANY.

(Filed 12 January, 1916.)

**1. Death, Wrongful—Interpretation of Statutes—Survival of Action.**

Revisal, sec. 59, changes the common-law rule by conferring a right of
action against one who has wrongfully caused the death of another, and
where the injured party has received in his lifetime full compensation
for the injury which resulted in his death, a right of action arising from
the same injury will not lie after his death for further damages for the
benefit of his estate, the same neither existing at common law nor con-
ferred by a reasonable interpretation of the language of the statute.

**2. Same—Pleadings.**

Where it appears from the pleadings in an action brought under the
provisions of Revisal, sec. 59, for damages for a wrongful death, that the
answer pleads a recovery by the party injured, before his death, upon
the same cause of action, and that his judgment had been paid, to which
the plaintiff demurred, it is *Held*, that the demurrer admitted the facts
stated in the answer, and the present plaintiff, administrator of the de-
ceased, cannot recover.

APPEAL by plaintiff from *Webb, J.,* at September Term, 1915, of
MECKLENBURG.

Civil action to recover damages for death of intestate, caused by
alleged negligence of defendant company.

The facts relevant to the inquiry are sufficiently embodied in the
judgment of his Honor overruling the demurrer, in terms as follows:

"This cause coming on to be heard before his Honor, James L. Webb,
judge presiding at said September Term, 1915, of the Mecklenburg
Superior Court, and being heard upon the complaint filed by the plain-
tiff, the answer filed by the defendant, and the demurrer filed by the
plaintiff to the further defense set up in defendant's answer, and it
appearing to the court from the pleadings referred to that this action
is brought by the plaintiff on account of the death of intestate, alleged
to have been caused by the negligence of the defendant, and it appear-
ing from the further defense set up in the defendant's answer that the
plaintiff's intestate, Jesse Edwards, prior to his death, brought an
action for damages on account of the same injuries involved in the
present action, which the plaintiff in this action alleges resulted in her
intestate's death; that the said action of Jesse Edwards v. Interstate
Chemical Corporation was duly tried and judgment rendered therein
for the plaintiff, and that said judgment has been duly satisfied by the
defendant, all of which will more fully appear by reference to the
further defense set out in the defendant's answer, the plaintiff having
filed a demurrer to said further defense admitting the truth of the alle-
gations contained therein: Now, therefore, it is hereby considered,
ordered and adjudged that the said demurrer, filed by the plaintiff,

be overruled, and that the plaintiff's action be and it hereby is dismissed by order of the court."

Plaintiff excepted and appealed.

*E. R. Preston and Duckworth & Smith for plaintiff.*
*John M. Robinson for defendant.*

HOKE, J. The question presented in the record has been much considered by the courts, and it has been very generally held, a position in which we fully concur, that the statute conferring a right of action for wrongfully causing the death of another, usually to be prosecuted by the personal representative, does not and was not intended to confer such right when the intestate, the injured party, had been compensated for the injury during his life and had received such compensation in full adjustment of his claim.

The legislation on the subject in this country is, to a large extent, modeled upon an English statute, commonly known as Lord Campbell's Act, 9 and 10 Vic., ch. 93, our own law, Revisal, secs. 59 and 60, being substantially a reproduction of the English statute, and the construction put upon the law in England was that the action would not lie if the injured party had, during his life, received satisfaction for the wrong; these courts being of opinion that it was the purpose and meaning of the statute to deprive the wrongdoer of the protection oftentimes afforded by reason of the common-law principle that actions of this character died with the person. *Read v. Great Eastern Ry.,* Law Reports, 3 C. Q. B. (1867 and 8), p. 555. In that action it was shown that the injured party, deceased, had accepted a sum of money in full satisfaction for the wrong, and the plea in bar was held a good defense. *Blackburn, J.,* delivering the principal opinion, said, in part: "Before that statute (Lord Campbell's Act), the person who received a personal injury and survived its consequences could bring an action and recover damages for the injury; but if he died from its effects, then no action could be brought. To meet this state of the law, the act of 9 and 10 Vic. was passed," etc.; and *Lush, J.,* concurring, said, in part: "I am of the same opinion. The intention of the statute is not to make the wrongdoer pay damages twice for the same wrongful act, but to enable the representatives of the person injured to recover in case where the maxim, *Actio personalis moritur cum persona,* would have applied. It only points to a case where the party injured has not recovered compensation against the wrongdoer." This construction of the law has been very generally adopted by the courts of this country, whether the statutory action is considered a new right or a continuation of the old, and there is very little to be added to the cogent reasoning which they have presented in support of the position. *Littlewood v. Mayor,* 89 N. Y., 24; *Telephone Co. v. Cassin,* 111 Ga., 575; *Thompson v. R. R.,*

97 Texas, 590; *Price v. R. R.,* 33 S. C., 556; *Hecht v. R. R.,* 132 Ind., 507; *Moony v. Chicago,* 239 Ill., 414. And cases in Supreme Court of the United States and text-books of approved excellence recognize and approve the principle. *Michigan Cent. Ry. v. Vreeland,* 227 U. S., pp. 59-70; Tiffany on Death by Wrongful Act (2 Ed.), sec. 124; 3 Elliott on Rys. (2 Ed.), sec. 1376; 8 A. and E. Enc., p. 870; 13 Cyc., p. 325.

In the citation to Tiffany the author says: "If the deceased, in his lifetime, has done anything that would operate as a bar to a recovery by him in damages for the personal injury, this will operate equally as a bar in an action by his personal representative for his death. Thus, a release by the injured party of his right of action or a recovery of damages by him for the injury is a complete defense in the statutory action."

In *Vreeland's case, Associate Justice Lurton,* delivering the opinion, said: "But as the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the *new action* is a right dependent upon the existence of a right in the decedent, immediately before his death, to have maintained an action for his wrongful injury."

A very satisfactory statement of the principle and the reasoning upon which it is properly made to rest will be found in the New York case of *Littlewood v. Mayor, supra,* where *Rapallo, J.,* delivering the opinion, in part, said: "The counsel for the plaintiff is sustained by the authorities in the proposition upon which he mainly bases his argument in this case, viz., that the right of action given by the act of 1847 to the personal representatives of one whose death has been caused by the wrongful act, neglect, or default of another is a new right of action created by the statute, and is not a mere continuation in the representatives of the right of action which the deceased had in his lifetime. But it seems to me that this is not the point upon which the case turns, and that the true question is whether, in enacting the statute, the Legislature had in view a case like the present, where the deceased, in his lifetime, brought his action, recovered his damages for the injury which subsequently resulted in his death, and received satisfaction for such damages; and whether it was intended to superadd to the liability of a wrongdoer, who had paid the damages for an injury, a further liability, in case the party afterward died from such injury, for the damages occasioned by his death, to his next of kin; or whether the intention of the statute was to provide for the case of an injured party who had a good cause of action, but died from his injuries without having recovered his damages, and in such case to withdraw from the wrongdoer the immunity from civil liability afforded him by the common-law rule that personal actions die with the person, and to give the statutory

action as a substitute for the action which the deceased could have maintained had he lived.

"There can be no doubt that the Legislature had power to create the double liability contended for, nor would it necessarily involve any inconsistency. The damages of the party injured are different and distinguishable from those which his next of kin sustained by his death, and no double recovery of the same damages would result. But it is equally clear that the Legislature might give to the representative the statutory right of action, only as a substitute for the damages which the deceased was prevented by his death from recovering, and the question now is, What was their intention in this respect?

"The language of the act plainly indicates, I think, that the framers had in view the common-law rule, *'Actio personalis,'* etc., and that their main purpose was to deprive the wrongdoer of the immunity from civil liability afforded by that rule. The gist of the first section is that the wrongdoer 'shall be liable to an action for damages, notwithstanding the death of the person injured, and though the death shall have been caused under such circumstances as amount in law to a felony.' It does not provide that the wrongdoer shall be liable notwithstanding that he shall have satisfied the party injured, or notwithstanding that the latter has recovered judgment against him, or notwithstanding any other defense he might have had at the time of the death, but merely that the death of the party injured shall not free him from liability; showing that this is the point at which the statute is aimed.

"The condition upon which the statutory liability depends was declared to be 'that the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages,' etc.

"This language is accurate if the act was intended to apply to the case of a party who, having a good cause of action for a personal injury, was prevented by the death which resulted from such injury from pursuing his legal remedies, or who omitted in his lifetime to do so. It precisely fits such a case, but it is singularly inappropriate to the case of one who has, in his lifetime, maintained the action and actually recovered his damages. The form of expression employed in the act shows that the Legislature had in mind the case of a party entitled to maintain an action, but whose right of action was by the rule of the common law extinguished by his death, and not the case of one who had maintained his action and recovered his damages. This still more strongly appears by reference to the words of the act, which describe the wrongdoer against whom a right of action is given. He is not described by any language which is applicable to a party against whom judgment has been obtained by the deceased for the injury, but as 'the person who would have been liable if death had not ensued.' And the

enactment is that his person shall be liable, notwithstanding the death. It seems to me very evident that the only defense of which the wrong-doer was intended to be deprived was that afforded him by the death of the party injured, and that it is, to say the least, assumed throughout the act that at the time of such death the defendant was liable. In the present case the defendant does not answer the description of 'the person who would have been liable if death had not ensued.' It would not have been liable if the injured party were living, for the former judgment would be a complete bar. The statute may well be construed as meaning that the party who at the time of the bringing of the action 'would have been liable if death had not ensued' shall be liable to an action notwithstanding the death, etc."

These views of the learned judge, arising chiefly from the language of the statute, derive strong support from the suggestion that, although the statute may be considered in some respects as creating a new right of action, it has its foundation in a single wrong, and it is not likely that the Legislature would intend to subject the wrongdoer to additional liability when he has made compensation to the injured party in his lifetime in full adjustment of the wrong done him. And further to hold that, notwithstanding such adjustment, the offender might, at some time in near or distant future, be subjected to an additional claim for damages on the death of the party injured would be to impose upon such a claim an undue and prejudicial restriction and would oftentimes prevent the injured party in his lifetime from realizing in his sore need a satisfactory and present compensation. A wrongdoer would be little inclined and hardly justified in offering adequate adjustment with such a possibility hanging over him.

We were referred by counsel to *Causey v. R. R.,* 166 N. C., 5, as being in-contravention of our present ruling, but we do not so interpret the decision. In that case the question presented was whether the statute of limitations commenced to run from the time of the injury or from the death of the injured party, and the Court, in adopting the latter period, held that the statute, in that respect, must be considered as conferring a new right of action, and the statute of limitations, in cases of this character, dealing only with the remedy, the statute would only commence to run from the time when, by the terms of the statute, the right of action arose, to wit, the death.

True, in support of this position, it was said that the words of this act conferring the right in cases "where, if the injured party had lived, he could maintain an action for damages," were only descriptive of the class of actions to which the statute referred, and did not operate to constitute it a survival of the old action. While this is certainly true on the facts there presented and in so far as the statute of limitations is concerned, it was by no means held, nor was it intended to hold, that

this was all the significance that the language should receive in the further interpretation of the statute; nor was it decided in that case, or intended to be, that the statutory action, having for its basis one and the same wrong, was to be regarded as so entirely separate and distinct that an additional recovery could be had, notwithstanding that all claim for damages therefor had been fully adjusted in the lifetime of the injured party. And in *Bolick v. R. R.,* 138 N. C., 370, to which we were also referred, the only question decided was that the statutory action did not accrue till the death of the injured party, and could not, therefore, be incorporated by amendment with an action which had been instituted by the deceased in his lifetime.

It will be noted, in *Bolick's case,* that no compensation for the wrong had been received by the deceased, and, therefore, a cause of action existed in him at the time of his death, thus bringing the case under the exact language of the statute, and while the statutory right could not be pursued in the original action, the present *Chief Justice,* delivering the opinion, said: "Where death occurs pending an action for personal injuries, the *cause* is *merged* in the action for the death, and the only remedy is that given by section 1498 of The Code, now Revisal, sec. 59"; thus recognizing that to come within the language of the statute there must have been a cause of action existent at the time of his death. See notes in A. and E. Anno. Cases to recent case of *R. R. v. Goode,* 42 Okla. at p. 1152, and same volume, *Md. v. R. R.,* 121 Md., 457.

There is no error in the judgment, and the same must be

Affirmed.

CLARK, C. J., dissenting: As said in *Bolick v. R. R.,* 138 N. C., 370, "A cause for damages by wrongful death cannot accrue until the death," and it was held that, therefore, it could not be set up by amendment to an action which had been instituted by the deceased himself for injuries which subsequently resulted in his death. It would surely follow from this that they are, so to speak, independent causes of action, and that a recovery for or the compromise of a cause of action for personal injuries by the deceased could not possibly bar an action for his wrongful death, which could only accrue subsequent thereto by his death.

Whatever may be the opinion of the individual members of this Court whether a cause of action should be maintainable for wrongful death, this is not a matter for the courts, but for legislation. Formerly such cause of action could not be maintained. The Legislature has now provided that such cause of action can be asserted. In this case there has been a death, and the complaint alleges that it was caused by the negligence of the defendant. No one can recover for such cause of action except the administrator or executor of the deceased. *Killian*

*v. R. R.,* 128 N. C., 261, where the history of this legislation is given. It is now asserted, in this case, by the personal representative for the first time. It has not been paid, and it has not been compromised, and it did not exist until the death of his intestate, who could not, and, indeed, did not attempt to, settle for such wrongful death.

It is true that in this action there should not be allowed any recovery for the physical pain and injury suffered by the intestate, which is usually an element in the damages recoverable for wrongful death, as this element has already been paid for. But the damages sustained by the wrongful death were given by the statute, and accrued subsequent to the recovery of the judgment by the intestate for his physical injuries, and the statute does not contemplate that payment for injuries and physical sufferings to the plaintiff's intestate should bar the family of the decedent from recovering for their loss of the value of his services to them. This is a subsequent and greater damage, and accrues to a different party.

It is true that the Legislature might amend the statute to so provide. But it is very doubtful, considering the object of the statute, which is principally to provide for the dependent family of the decedent, that the Legislature would so enact. Certainly it has not so enacted, and there is nothing in the wording of the statute which intimates to the Court that the General Assembly so intended.

In *Bolick v. R. R.,* 138 N. C., 373, it is said: "It is no defense to an action to recover for the wrongful death of the intestate that he had in his lifetime recovered a judgment against the same defendant for personal injuries which resulted in his death." The opinion in this case added: "We think this was correctly held, for there the death was a cause of action accruing subsequent to the judgment."

In *Whitehurst v. R. R.,* 160 N. C., 2, the Court, citing *Bolick v. R. R., supra,* held that where the plaintiff's intestate began an action for personal injuries and died before its termination his personal representative could bring an action for the wrongful death.

In *Broadnax v. Broadnax,* 160 N. C., 432, it was held, again citing *Bolick v. R. R., supra,* that the amount of damages recovered for a wrongful death is not liable to be applied in payment of debts and legacies, and that such cause of action did not exist until the statutes therein recited, beginning with chapter 39, Laws 1854-55, and succeeding statutes, which are now Revisal, 59 and 60. It follows inevitably that, as the action can only be brought by the personal representative, the decedent could not recover or compromise for such cause of action if he had attempted to do so, which he did not, in this case.

In *Watts v. Vanderbilt,* 167 N. C., 567, it was held, citing *Bolick v. R. R.,* that actions for injuries to the person do not survive. It was for these injuries that the intestate recovered. It is certainly based

upon authority and reason, and settled by the above decisions, that the cause of action for which the deceased recovered judgment is an entirely separate and distinct cause of action from that for wrongful death, for which this action is brought. The cause of action for personal injuries would have abated at the death of the decedent. The cause of action for wrongful death did not accrue till the death, and is created by the statute and in favor of a different party. A recovery, or a compromise, for the former, being an entirely separate and distinct matter both in law and fact and in a different right, such judgment or compromise cannot bar a recovery by the plaintiff for this entirely separate and distinct action for wrongful death.

This case depends upon the construction of our own statute, but the conclusion reached in this dissent is sustained by many decisions upon similar statutes elsewhere. *Sturges v. Sturges,* 126 Ky., 12 L. R. A. (N. S.), 1014; *Chesapeake v. Dixon,* 179 U. S., 131; *Donahue v. Drexler,* 82 Ky., 157, 56 Am. Rep., 886; *Meyer v. Coll,* 19 Ky., 480.

In *Donahue v. Drexler,* 82 Ky., 157, 56 Am. Rep., 886, it was held that a settlement by the decedent in his lifetime for injuries occasioned by assault and battery was no bar to an action by his widow for damages on account of his death caused thereby—the latter action being maintainable under the laws of that State.

In 8 Ruling Case Law, 732, it is said: "Authorities are not wanting which take the view that under the survival act and the death act two separate and distinct causes' of action are created which may coexist, but have no connection, and that these two actions may be prosecuted concurrently. *Davis v. R. R.,* 53 Ark., 117; *Gas Co. v. Orr,* 59 Ark., 215; *Telephone Co. v. Cassin,* 111 Ga., 575; *Stewart v. Electric Co.,* 104 Md., 332, 8 L. R. A. (N. S.), 384; *Bownes v. Beston,* 165 Mass., 344; *Brown v. R. R.,* 106 Wis., 137. The two actions, though prosecuted (under those statutes) by the same personal representative, are not in the same right, and hence a recovery and satisfaction is not a bar to recovery in the other. *R. R. v. Van Alstine,* 77 Ohio St., 395. These decisions proceed on the ground that a statute similar to Lord Campbell's Act creates a new cause of action, while the survival statute merely saves to the personal representative of the deceased an action which he could have brought in his lifetime for injuries arising from negligence and default, and that it must necessarily follow that neither action is an alternative or substitute for the other, and, consequently, that both may be maintained. *Stewart v. Electric Co.,* 104 Md., 332, 8 L. R. A. (N. S.), 384; *Causey v. R. R.,* 166 N. C., 5.

Any injustice to the defendant, it was held, could be prevented by the trial judge limiting the recovery in the survival action for personal injuries to the loss occasioned to the deceased prior to his death, and, in the action for the wrongful death, to the pecuniary loss sustained

by the beneficiaries under such act. *Stewart v. Electric Co., supra; Brown v. R. R., supra.* In *Buck v. R. R.,* 125 Cal., 367, it is said: "Under our statutes the injured person might survive long enough to sue and recover damages or settle with the wrongdoer, and then by his death a new cause of action would accrue to his heirs."

In *Brown v. Electric Co.,* 70 Am. St., 684, it was held: "If a statute makes the killing of a passenger by a railroad corporation through gross negligence punishable by a penalty payable to the widow and children or next of kin, such passenger cannot release the corporation from liability, and, therefore, his agreement to do so cannot bar an action for his death brought by an administrator for the benefit of the persons entitled to the penalty. In the same case it is said: "It is an action for damages arising from the mere fact of death—not damages to the deceased, but damages to his successors under the statute. Therefore, we cannot comprehend the reasoning which enables an injured person to release a cause of action which has not accrued, and cannot accrue until his death, and which then accrues to third persons. It would be necessary, to support such a conclusion, that we admit that a person has a right of action for his own death. A greater degree of absurdity would not be attained in the enactment of a statute making suicide punishable as murder in the first degree."

Upon the authorities and, it would seem, upon the logic and the letter of the statute the plaintiff's right of action in this case is an entirely separate and distinct cause of action from that for which his intestate recovered, and is not barred by the judgment recovered by such intestate for the personal injuries sustained, which later resulted in his death and the creation thereby of the cause of action in favor of his personal representative for the benefit of those entitled to share in the distribution of his personal property. Revisal, 59. This recovery, it is expressly stated, shall be "such damages as are a fair and just compensation for the pecuniary injury resulting from such death." Revisal, 60. These could not possibly have accrued to the intestate or have been estimated in his favor.